THE MASONIC TEMPLE CO., APPELLEE, *v.* ADAMS ET AL., APPELLANTS.

(No. 1405—Decided February 19, 1958.)

*Messrs. Vandemark & Vandemark,* for appellee.
*Messrs. Provenza & Friedman,* for appellants.

DOYLE, J. This is an appeal for trial *de novo* from the Court of Common Pleas of Lorain County.

By written contract dated November 26, 1956, Paul and Pauline Adams, husband and wife, agreed to sell certain real property to The Masonic Temple Company, an Ohio corporation, for $56,000, upon terms and conditions therein set forth.

The Temple Company asserts, in the present action for specific performance, that it has fulfilled its contractual obligations and is entitled to a conveyance of the property.

The Adamses deny the several claims of the company and specifically plead special defenses, some of which will be here discussed.

The contract is:

"Option to Purchase

"Know all men by these presents, that we, Paul Adams and Pauline Adams, the undersigned, in consideration of five hundred dollars ($500.00) to us in hand by The Masonic Temple

Company, hereinafter called the purchaser, have given and granted and do hereby give and grant unto the said purchaser, his executors, administrators, and assigns, the sole, exclusive and irrevocable option to and including the first day of April, 1957, to purchase the following described property in Lorain County, State of Ohio, City of Elyria, No. 232 East Avenue, to wit:

"Parcel with 115.5 feet on the east side of East Avenue, and 280.5 feet on the north side or to river, and 200 feet approximately on the south side or to river." This property is opposite where 3rd street and East Avenue join, at and for a purchase price of fifty-six thousand dollars ($56,000.00), payable as follows, to wit:

"Fifty-five thousand five hundred dollars ($55,500.00) at the time the purchaser elects to purchase said property. Said sum to be paid not later than the date above fixed for the expiration of this option.

"Within 10 days after the purchaser elects to exercise this option, and make the final payment, we agree to furnish said purchaser a guaranteed title, free and clear of all encumbrances; taxes are to be pro-rated to date of transfer, based upon the 1956 tax rate.

"Upon payment of said purchase price, seller agrees to convey the above described property to said purchaser by good and sufficient warranty deed. It is further understood possession of property is to be delivered within 75 days from the time option is taken up.

"Time is the essence of this contract and should the said purchaser fail for any reason whatsoever to elect to purchase said property on or before the expiration of the time above stated, then this contract shall be absolutely null and void and of no further force or effect and deposit of five hundred dollars ($500.00) shall be forfeited to seller.

"This option is subject to city zoning this commercial."

(The witnessed signatures of the respective parties appear at the end of this instrument.)

It appears that a check for $500 was given to, and accepted by, the property owners when the instrument was executed.

The defendants, in resisting the prayer for specific per-

formance, deny that the agreement "constituted an option * * * to purchase the premises * * *, but * * * that said writing was a conditional agreement for an option and subject to the condition that the premises * * * be rezoned as commercial property prior to April 1, 1957."

It is further pleaded that, "at the time of execution of said agreement, said premises were located in an R-3 residence district as prescribed by ordinance No. 4297 of the ordinances of the city of Elyria, Ohio; that in order to comply with the condition precedent contained in said agreement, amendment of ordinance No. 4297 was necessary to rezone said premises as commercial property; that on or prior to April 1, 1957, said ordinance was not amended in the respects required and said rezoning was not accomplished; defendants therefore aver that said condition precedent was not complied with on or prior to April 1, 1957, and by reason thereof said paper writing * * * did not become an option to plaintiff to purchase said property."

It appears that on March 23, 1957, the Temple Company, through its attorneys, notified the Adamses in writing of its election to exercise the option, and that it had deposited in escrow, with the Lorain Savings & Trust Company, the sum of fifty-five thousand five hundred dollars, with instructions to the bank that, when the Adamses delivered to the bank a warranty deed with stamps attached, and a guaranteed title report, in compliance with the terms of the agreement, the bank would give them the money.

The evidence shows that the Temple Company deposited the money with the bank, and instructed the bank in the terms set out in the notice to the Adamses.

On the 2nd of April, 1957, the Adamses notified the Temple Company that they would not comply with the agreement, for the following reasons:

"1. The purported option was not exercised within the time prescribed therein for its exercise.

"2. The condition precedent required to make said purported option effective had not been complied with prior to its termination date."

The Temple Company's check for five hundred dollars was returned by the Adamses to the company on this same day, with

the statement that "The option, not having become effective, said check * * * [is] accordingly returned to you."

The defendants summarize the questions here involved as follows:

"1. Did the agreement * * * ripen into an option?

"2. If so, was the option exercised?"

There is no set or invariable form of giving a so-called "option" to an individual; however, the form in which such an agreement is expressed is an important matter, and general rules are not applicable to all alike.

We shall speak first of an option which may be regarded as a conditional contract by discussing a hypothetical case.

A. agrees to sell certain real property to B. for $1,000, if paid within thirty days; and in consideration B. pays $10 in cash. Out of this factual situation there arises a unilateral contract to sell on condition. There is no offer to be accepted and no offer that can be revoked. Payment by B. within the thirty-day period is not an acceptance of an offer; it is the fulfillment of a condition precedent to the liability of A. on his previous contract. B., of course, is not bound to fulfill the condition by paying; and, if he does not pay, he cannot sue for his $10 payment, nor for damages, or specific performance in respect to the real property. The performance by B. of the condition precedent by a payment of $1,000 is not the consideration for A.'s promise to convey. The consideration for that promise was the payment of the $10 when the contract was first made.

The contract in this case is actually unilateral, but there is authority which holds that it becomes bilateral after acceptance. Here, there is no question as to mutual assent. When B. paid $10, the parties were agreed. This payment completed the contract, and the obligation of A. became fixed, although it was a conditional obligation. Upon fulfillment of the condition by B., B. is entitled to a conveyance of the property, and, upon A.'s refusal to convey after the fulfillment of the conditions, B. can sue and may recover for damages at law, or for the return of the $10 in quasi contract, or for specific performance in equity.

Similar to the preceding hypothetical case, the Adamses agreed to sell their property to the Masonic Temple Company

for a certain sum of money, payable not later than the first day of April, 1957. Under the conditional contract, the Masonic Temple Company was not bound to fulfill the condition and was under no legal obligation to do so. If, however, it wanted the property as its own, it was bound to comply unequivocally with the condition precedent: *i. e.,* to pay the vendor the stipulated amount of money at the time set in the contract. This, in short, was the agreement.

The Masonic Temple Company, in negotiating the contract, instead of fulfilling the condition precedent, by paying "fifty-five thousand five hundred dollars ($55,500) at the time * * * [it elected] to purchase said property," and in all events not later than April 1, 1957, deposited $55,500 in escrow in a bank of its own choosing, with an order to the bank to pay to the optionors the said sum on deposit only on conditions *unauthorized* in the written contract. An examination of the contract reveals no words or phrases even suggesting the delivery of a warranty deed and a guaranteed title report as a condition to the payment of the purchase price within the stipulated time. The contract provision referring to title specifically appears as follows:

"Within 10 days after the purchaser elects to exercise this option *and make the final payment,* we agree to furnish said purchaser a guaranteed title, free and clear of all encumbrances." (Italics ours.)

In the contract before us, time is specifically made of the essence. The act of payment of the purchase price within the time specified is made a condition precedent to any rights of the prospective purchaser to secure the property. What, then, are the facts in relation to these express conditions which must be enforced according to their terms?

The bank, as the agent of the Masonic Temple Company, holds the money for the said company—the optionee. Delivery of the money has not been made to the prospective sellers, and, according to the limitations of the agency, cannot be made unless the said prospective sellers comply with conditions not contemplated in the option contract.

Under such circumstances, the contract has terminated, and the property owners are under no obligation to convey their property, because of the failure of the optionee to accept

and complete the contract by payment within the prescribed time. April 1, 1957, has long since passed.

In unilateral contracts of this character, acceptance must consist of payment to the optionor within the stipulated time. The optionee's notice to the optionors that it accepted and would pay on condition, did not alter the optionors' obligation, and was the fulfillment of no condition. The optionee's promise to pay on condition became an offer for a new contract, and of course was of no importance without acceptance. The old unilateral contract expired on April 1, 1957, and cannot now be made the basis for an action in specific performance.

Summarizing the above, we state that:

A conditional unilateral contract for the sale of real property—sometimes called an option to sell real estate—is made mutual and binding on the parties only by the exercise thereof within the time limited and upon the terms specified therein. When payment of money within a time specified is made a condition precedent, an attempt to comply with such condition on different terms amounts, in effect, to a rejection of the right to complete the contract. The rights of a prospective vendee in a contract of this character cease on his failure to meet the conditions precedent by actual payment within the time and on the terms prescribed.

See: 1 Williston on Contracts (Rev. Ed.), Section 73; 3 Williston on Contracts (Rev. Ed.), Section 666A; 55 American Jurisprudence, Vendor and Purchaser, Section 41; 91 Corpus Juris Secundum, Vendor and Purchaser, Section 10, *et seq*; 23 Yale Law Review, 641, Option Contracts.

Compare: *Longworth and Anderson, Exrs.,* v. *Mitchell,* 26 Ohio St., 334; *George Wiedemann Brewing Co.* v. *Maxwell,* 78 Ohio St., 54, 84 N. E., 595; *Midland Properties Co.* v. *Union Properties, Inc.,* 148 F. Supp., 150.

We find against the appellee in its quest for specific performance, and in favor of the appellants, for the reasons herein set forth.

We find it unnecessary to discuss other claimed defenses.

*Decree for appellants.*

HUNSICKER, P. J., and STEVENS, J., concur.