[Cite as *Simecek v. Simecek*, 2024-Ohio-2471.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| DAWN A. SIMECEK | | C.A. No.   30800 |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN J. SIMECEK | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.   CV-2021-04-1239 |

## DECISION AND JOURNAL ENTRY

Dated: June 28, 2024

STEVENSON, Presiding Judge.

{¶1}   Appellant Dawn A. Simecek ("Sister") appeals from the Summit County Court of Common Pleas adopting a magistrate's decision and entering judgment in favor of Appellee Brian J. Simecek ("Brother") on Sister's breach of contract claim and on Brother's declaratory judgment claim. Sister also appeals the trial court's decision granting Brother's supplemental motion for summary judgment and dismissing Sister's fraud claim.  This Court affirms.

I.

{¶2}   Kathleen Simecek passed away and left approximately two acres ("the Property") to Sister, Brother, and non-party brother R.S. The Property included a residence and pole barn.

{¶3}   In exchange for $60,000 from Brother and $10,000 from Sister, R.S. released his interest in the Property while it was still in Kathleen's probate estate. Brother and Sister were both interested in the Property, with Brother interested in the residence and Sister interested in the pole

barn. To accommodate their interests, Brother and Sister discussed splitting the Property into two lots with the residence on one lot and the pole barn on a separate lot ("the Vacant Lot").

{¶4} After R.S. released his interest, the estate transferred the Property to Brother, and Brother and Sister executed an Option to Purchase Real Estate ("Option Agreement") on December 29, 2018. In conjunction with the Option Agreement, Brother signed a $60,000 cognovit promissory note in Sister's favor and Sister signed a document authorizing R.S., the executor of Kathleen's estate, to transfer the Property into Brother's name.

{¶5} Sister had two years under the Option Agreement to exercise, in writing, the option to purchase the Vacant Lot ("the Vacant Lot Option"). If Sister provided timely written notice to Brother, "the Vacant Lot Option * * * [became] a binding contract for the purchase of the Vacant Lot * * *." The agreed purchase price for the Vacant Lot was $130,000. Brother and Sister agreed that, if Sister exercised the Vacant Lot Option, the $60,000 cognovit promissory note payable to Sister would be applied to the purchase price. Sister stipulated at trial that she did not provide written notice to Brother within two years that she was exercising the Vacant Lot Option.

{¶6} After the Vacant Lot Option expired, Brother sent Sister a letter noting that the two-year period had ended. Brother's letter included a $60,000 check to satisfy the cognovit promissory note. Sister rejected the check and filed suit against Brother. Sister's claims against Brother included breach of contract, negligent misrepresentation, fraud, constructive/resulting trust, contract reformation, and specific performance. Sister requested reformation of the Option Agreement to enlarge the two-year Vacant Lot Option period. Sister also requested specific performance of the Option Agreement as reformed.

{¶7} Brother denied Sister's claims and asserted a declaratory judgment counterclaim based on the Option Agreement. Brother asserted in his counterclaim that the Vacant Lot Option

period expired; that it is undisputed that Sister did not provide timely written notice that she was exercising the Vacant Lot Option; and that, by its own terms, the Vacant Lot Option is "null, void, and of no further force and effect whatsoever."

{¶8} The trial court bifurcated Sister's breach of contract and fraud claims and referred the matter to a magistrate to preside over a bench trial. The magistrate heard Sister's breach of contract claim and Brother's declaratory judgment counterclaim. Brother, Sister, and Twinsburg's city planner testified at the bench trial. After taking the matter under advisement, the magistrate decided in favor of Brother on Sister's breach of contract claim. The magistrate also granted judgment in favor of Brother on his declaratory judgment claim, finding that Sister failed to give notice to exercise the Vacant Lot Option as required under the Option Agreement. The magistrate held that the Vacant Lot Option is null, void, and of no further force and effect.

{¶9} Sister objected to the magistrate's decision. The trial court overruled Sister's objections and entered judgment in favor of Brother on the breach of contract claim and declaratory judgment counterclaim. The court found that Sister failed to give timely written notice that she was exercising the Vacant Lot Option and that the Vacant Lot Option is null, void and of no further force and effect.

{¶10} Following the bench trial, the trial court granted Brother leave to file a supplemental motion for summary judgment on Sister's fraud claim. After Sister responded in opposition, the trial court granted Brother's supplemental motion and dismissed Sister's fraud and constructive/resulting trust, contract reformation, and specific performance claims.

{¶11} Sister appeals the trial court's orders adopting the magistrate's decision granting judgment in favor of Brother and granting Brother's supplemental motion for summary judgment. Sister asserts seven assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN DETERMINING THAT [BROTHER] DID NOT BREACH THE CONTRACT WHEN HE FAILED TO ACT IN GOOD FAITH TO TIMELY ACCOMPLISH THE LOT SPLIT.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN CONCLUDING THAT [SISTER] WAS NOT PREVENTED FROM EXERCISING HER OPTION TO PURCHASE DUE TO [BROTHER'S] FAILURE TO ACCOMPLISH THE LOT SPLIT.**

**{¶12}** Sister argues in her first assignment of error that Brother breached the Option Agreement when he failed to act in good faith to timely accomplish the lot split. Sister argues in her second assignment of error that the trial court erred in concluding that Brother's failure to accomplish the lot split did not prevent her from exercising the Vacant Lot Option. We will address the first and second assignments of error together as they both pertain to Sister's breach of contract claim and involve the same Option Agreement language. For the reasons discussed below, we overrule Sister's first and second assignments of error.

### Standard of Review on the Adoption of a Magistrate's Decision

**{¶13}** The trial court overruled Sister's objections and adopted the magistrate's decision. "Although the trial court must conduct an independent review of objections to a magistrate's decision, see Civ.R. 53(D)(4)(d), this Court's standard of review is more deferential." *Wilson v. Wilson*, 9th Dist. Summit No. 24245, 2008-Ohio-6431, ¶ 12. This Court reviews the trial court's ruling on objections, and its decision to adopt the magistrate's decision, for an abuse of discretion. *Id.*; *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

{¶14} An abuse of discretion is something more than an error of law or in the exercise of judgment; "it implies that the court's *attitude* is unreasonable, arbitrary or unconscionable." (Emphasis added.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶15} Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24.

### Breach of Contract

{¶16} Sister argues that Brother breached the Option Agreement when he failed to split the lot. To establish a breach of contract, a party must establish "the existence of an agreement, that the non-breaching party fulfilled its obligations under the agreement; a breach without legal justification; and damages to the non-breaching party." *Roth v. Tokar Tower Office Condominiums Unit Owners' Assn., Inc.*, 9th Dist. Lorain No. 21CA011811, 2023-Ohio-279, ¶ 24; *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41. This Court has recognized that, when the terms of a contract are unambiguous, it may look no further than the writing itself to find the parties' intent. *Simms v. Hupp*, 9th Dist. Summit No. 30513, 2023-Ohio-3615, ¶ 17.

**{¶17}** Until a buyer exercises his or her option to purchase, option to purchase real estate agreements, like the Option Agreement, are unilateral contracts. *See Masonic Temple Co. v. Adams*, 106 Ohio App. 23, 29 (9th Dist.1958); *Lees v. Meyer*, 9th Dist. Lorain No. 93CA005605, 1993 WL 657864, \*1 (Dec. 22, 1993). *See also Boblien, Inc. v. Hoge*, 9th Dist. Medina No. 2967-M, 2000 WL 727539, \*1 (June 7, 2000). Options to purchase real estate agreements become bilateral contracts once the option is exercised. *Central Funding, Inc. v. CompuServe Interactive Servs.*, 10th Dist. Franklin No. 02AP-972, 2003-Ohio-5037, ¶ 38. As explained in *Central Funding, Inc.*, an option contract:

> consists of two independent elements: (1) an offer to buy, sell, or perform some act, which becomes a contract if properly accepted; and (2) the binding agreement to leave the offer open for a specified period of time. Thus, an option is a continuing offer, as well as a unilateral contract, binding the offeror of the option. "An option to buy may be exercised by giving notice of an intention to purchase; such a notice is in effect an acceptance of the offer to sell." Although the holder of the option is not required to exercise it, once the option is exercised, a bilateral contract arises between the parties to the option to perform in accordance with the option terms.

(Citations omitted.) *Id.* at ¶ 38.

**{¶18}** Under an option agreement, "a party may exercise its option *only* in the manner provided in the contract." (Emphasis sic.) *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380 (1993). "If a time limit is given for exercising an option, the option may not be exercised after that time has passed." *Id.*

**{¶19}** The Option Agreement recognized the parties' desire to allow Sister, within two years, to exercise the option of purchasing the Vacant Lot. The Option Agreement stated:

> **3. OPTION PERIOD AND NOTICE OF EXERCISE. [Sister]** and **[Brother]** agree that the Vacant Lot Option shall remain effective for two years after the date this Option Agreement is signed (the 'Vacant Lot Option Period'). **[Sister]** may exercise the Vacant Lot Option by giving notice in writing to **[Brother]** within the Vacant Lot Option Period. From and after the giving of the notice to exercise, the Vacant Lot Option shall become a binding contract for the purchase of the Vacant Lot on the terms and conditions stated herein. If **[Sister]**

fails to give the notice to exercise the Vacant Lot Option within the Vacant Lot Option Period, or the Vacant Lot is unable to be created, the Vacant Lot Option shall be null, void and of no further force and effect whatsoever.

* * *

**6.     CLOSING.**  If the Vacant Lot Option is timely exercised, the Vacant Lot Closing of the sale and purchase of the Vacant Lot shall occur in no event later than thirty (30) days after the date of the exercise of the Vacant Lot Option. * * *

Paragraph 18 of the Option Agreement provided the addresses where "[a]ny notice required or permitted to be given by this Option shall be given in writing * * *." The parties entered into the Option Agreement on December 29, 2018. Therefore, Sister had until on or before December 29, 2020 to exercise the Vacant Lot Option.

{¶20}  Sister has not challenged the language contained within the Option Agreement. Sister stipulated that she did not provide written notice to Brother, within the two-year period, that she was exercising the Vacant Lot Option. Sister argues that she could not exercise the Vacant Lot Option until the Vacant Lot existed.

{¶21}  Brother argues that, under the Option Agreement, Sister's action comes first. Brother maintains that he was not required to split the lot before Sister exercised the Vacant Lot Option.

{¶22}  The Option Agreement recognizes that Brother "will be attempting to split the current lot * * *." There is no language in the Option Agreement requiring Brother to split the lot before Sister exercises the Vacant Lot Option. Rather, the Option Agreement specifically states that Sister had two years to provide Brother with written notice that she was exercising the Vacant Lot Option. There is no dispute that Sister did not exercise the Vacant Lot Option in writing and within the two-year period as provided in the Option Agreement.

**{¶23}** Once Sister did not exercise the Vacant Lot Option, pursuant to its own terms, the Vacant Lot Option became "null, void and of no further force and effect whatsoever." Because Sister did not "timely exercise[]" the Vacant Lot Option, the Option Agreement never became a bilateral contract requiring Brother to then act. *See Masonic Temple Co.*, 106 Ohio App. at 29; *Lees*, 9th Dist. Lorain No. 93CA005605, 1993 WL 657864, at *1; *Central Funding, Inc.*, 10th Dist. Franklin No. 02AP-972, 2003-Ohio-5037, ¶ 38. Accordingly, the trial court did not abuse its discretion in adopting the magistrate's decision on this claim.

### Good Faith and Fair Dealing

**{¶24}** Sister further alleges that Brother breached a duty of good faith and fair dealing under the contract when he failed to split the lot. Sister argues that Brother waited until over a year after entering into the Option Agreement to take any steps necessary to split the lot and that he then waited until after the expiration of the Option Agreement to apply for the lot split. Sister maintains that Brother's inaction constitutes a breach of the duty of good faith and fair dealing.

**{¶25}** Brother argues that he did not breach any obligations under the Option Agreement. Brother asserts that his conduct after the expiration of the Vacant Lot Option, including his application and subsequent approval for the lot split, does not support a claim that he failed to perform under the Option Agreement.

**{¶26}** The Ohio Supreme Court has established that, "[i]n addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell*, 152 Ohio St.3d 453, 2018-Ohio-15, at ¶ 42. A party does not breach its implied duty of good faith and fair dealing, however, "merely by seeking to enforce the contract or by acting as permitted by its express terms." *Id.* at ¶ 43. The Supreme Court explained that

"there is no violation of the implied duty [of good faith and fair dealing] unless there is a breach of a specific obligation imposed by the contract * * *." *Id.*

{¶27} The Option Agreement recognizes that Brother would "attempt[] to split the current lot * * *[,]" not complete a lot split before Sister could exercise the Vacant Lot Option. Brother testified at length as to his attempts, starting when he contacted the city planner and contractors in August 2019. The magistrate found that Brother did not breach any specific obligations imposed under the Option Agreement and that he acted in accordance with the express terms of the Option Agreement.

{¶28} For the reasons set forth above, we conclude that the trial court did not abuse its discretion by adopting the magistrate's decision and granting judgment in favor of Brother on Sister's breach of contract claim. The Option Agreement did not require Brother to split the lot before Sister exercised the Vacant Lot Option. Sister's first and second assignments of error are overruled.

**ASSIGNMENT OF ERROR NO. III**

**THE MAGISTRATE EXPRESSLY DENIED [SISTER] THE OPPORTUNITY TO SUBMIT AN EVIDENTIARY PROFFER AND THE TRIAL COURT REFUSED TO CORRECT THIS ERROR[.]**

{¶29} Sister argues in her third assignment of error that the magistrate denied her the opportunity to submit an evidentiary proffer and that the trial court refused to correct this error. We disagree.

{¶30} This Court has noted that, "when appealing from a trial court's order adopting a magistrate's decision, '[a]ny claim of trial court error must be based on the actions of the trial court,' not the magistrate." *J.P. v. T.H.,* 9th Dist. Lorain No. 14CA010715, 2016-Ohio-243, ¶ 28, quoting *Citibank v. Masters*, 9th Dist. Medina No. 07CA0073-M, 2008-Ohio-1323, ¶ 9. Hence,

"the standards for appellate review do not apply to the court's acceptance or rejection of the magistrate's findings or proposed decision." *J.P.* at ¶ 28, citing *Mealey v. Mealey*, 9th Dist. Wayne No. 95CA00093, 1996 WL 233491, *2 (May 8, 1996). The proper inquiry is whether the trial court abused its discretion in overruling Sister's objections to the magistrate's decision. *Wilson*, 9th Dist. Summit No. 24245, 2008-Ohio-6431, at ¶ 12; *Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, at ¶ 5. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore*, 5 Ohio St.3d at 219.

**{¶31}** Sister's counsel moved at trial to proffer the following question that he asked Brother during cross-examination:

> Q      Did you have an obligation to split the property under the contract to your
>         understanding?
>
> THE COURT:  Sustained.  I'm not going to allow that question.
>
> [TRIAL COUNSEL:] Your honor, I want to proffer that question, and I want a
> proffered answer to protect the record.
>
> THE COURT:  I'm not going to allow the witness to answer the question.
>
> [TRIAL COUNSEL:] Not even on a proffer?
>
> THE COURT:  No.

Sister argues that the trial court's decision should be reversed for the failure to permit this evidentiary proffer. It is Sister's position that this inquiry is relevant to the parties' intent and the issue of whether Brother acted in good faith.

**{¶32}** The trial court overruled Sister's objection to the magistrate's ruling disallowing the proffer. The trial court determined that the question called for a legal opinion from Brother, who is not a lawyer and who was not offered or qualified as an expert witness. The trial court cited

*State v. Minton*, 4th Dist. Adams No. 15CA1006, 2016-Ohio-5427, ¶ 54, for the following proposition:

> The trial court's actions were not arbitrary because the court intended to prevent the witness from providing an opinion as to a legal conclusion. *See* Evid.R. 701, staff notes ("Ohio has long adhered to the general rule that only facts can be given in evidence by a non-expert witness, leaving the necessary and natural deductions from those facts to be made by the jury. * * *").

**{¶33}** The trial court did not abuse its discretion when it overruled Sister's objection to the magistrate's ruling disallowing the proffer. Brother testified that he did not go to college or law school and that he is not an attorney. Brother was not testifying as a qualified or identified expert witness. Sister's proposed question was whether Brother had an obligation under the Option Agreement to split the Property. As Sister's proposed question sought a legal conclusion from Brother, the trial court did not err when it overruled Sister's objection. *See Minton* at ¶ 54, citing Evid.R. 701, staff notes.

**{¶34}** We also conclude that the trial court did not err as "[o]ffer of proof is not necessary if evidence is excluded during cross-examination." Evid.R. 103(A)(2). *See also State v.* Jackson, 9th Dist. Summit Nos. 22378, 22394, 2005-Ohio-5184, ¶ 12, citing Evid.R. 103(A)(2); *Abels v. Ruf*, 9th Dist. Summit No. 24359, 2009-Ohio-3003, ¶ 30. Further, "[i]t has long been recognized that counsel may not proffer the potential answer of an adversary's witness after the trial court sustains an objection to a question because counsel does not know how the witness will answer the question." *State v. Barrow*, 8th Dist. Cuyahoga No. 97920, 2012-Ohio-5058, ¶ 19.

**{¶35}** The trial court did not err in overruling Sister's objection to the exclusion of the proffered question on cross-examination. Not only did Sister's question seek a legal conclusion, but as this Court has recognized, a party need not proffer evidence that is excluded in cross-examination. Accordingly, Sister's third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. IV

## THE TRIAL COURT ERRED BY FAILING TO CONDUCT AN INDEPENDENT REVIEW OF THE MAGISTRATE'S DECISION.

**{¶36}** Sister argues in her fourth assignment of error that the trial court erred by failing to conduct an independent review of the magistrate's decision. We disagree.

**{¶37}** Civ.R. 53(D)(4)(d) states that, "[i]n ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." This Court recognizes that:

> [t]he independent review that is required of the trial court has two components: (1) whether, with respect to the objected matters, the magistrate properly determined the factual issues before it, and (2) whether the magistrate appropriately applied the law to those factual determinations.

*Lakota v. Lakota*, 9th Dist. Medina No. 10CA0122-M, 2012-Ohio-2555, ¶ 14. *Accord Giovanini v. Bailey*, 9th Dist. Summit Nos. 28631, 28676, 2018-Ohio-369, ¶ 19. "'The independent review requirement of Civ.R. 53(D)(4)(d) * * * does not prohibit the trial court from deferring to the magistrate's resolution of credibility because the magistrate retains a superior position, as the trier of fact, to consider the demeanor of witnesses and evaluate their credibility.'" *Giovanini* at ¶ 19, quoting *Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, at ¶ 14.

**{¶38}** The Ohio Supreme Court has recognized that, when an appellate court reviews a lower court's judgment, there is "presumption of regularity of the proceedings below." *Hartt v. Munobe*, 67 Ohio St.3d 3, 7 (1993). "'Appellate courts thus presume that a trial court conducted an independent analysis in reviewing a magistrate's decision in accordance with Civ.R. 53(D)(4)(d)." *Giovanini* at ¶ 20, quoting *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶ 27. A party asserting error has the burden of affirmatively demonstrating that the

trial court failed to conduct an independent analysis of the magistrate's decision. *Giovanini* at ¶ 20.

**{¶39}** "'An affirmative duty requires more than a mere inference, it requires appellant to provide the reviewing court with facts to rebut our general presumption.'" *Id.*, quoting *In re Taylor G.*, 6th Dist. Lucas No. L-05-1197, 2006-Ohio-1992, ¶ 21. As stated in *Giovanini* at ¶ 21:

> [T]he mere fact that the trial court did not cite any specific portion of a transcript or exhibit does not demonstrate the court failed to conduct an independent review of the objected matters as required by Civ.R. 53(D)(4)(d)." "While citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so.

(Citations omitted.)

**{¶40}** Sister argues that "the Trial Court's analysis appears to apply a deferential review to the Magistrate's Decision[.]" Sister presents no facts to rebut the presumption that the trial court independently reviewed the trial court's decision in accordance with Civ.R. 53(D)(4)(d). *Giovanini* at ¶ 20.

**{¶41}** "There is no requirement that a trial court must cite to a specific portion of the transcript or a specific exhibit" when ruling on objections to a magistrate's decision and "the failure to do so does not demonstrate the court failed to conduct an independent review of the objected matters." *Id.* at ¶ 23. This Court cannot conclude that a trial court failed to conduct an independent review "simply because [the trial court] did not discuss every conceivable characterization of the evidence." *Id.*, citing *Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 35.

**{¶42}** The trial court separately addressed each of Sister's objections in its order. The trial court's order references Sister's filings, including her objections, supplemental objections, and

amended complaint; the magistrate's findings; and other portions of the record. These facts support the presumption that the trial court conducted an independent review.

{¶43} There is nothing in the trial court's order indicating that it did not conduct an independent review of the magistrate's decision. Sister has not provided this Court with any contrary evidence. Sister's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED IN CONCLUDING THAT [SISTER] WAS NOT ENTITLED TO PAYMENT ON THE $60,000 PROMISSORY NOTE THAT THE PARTIES AGREED WAS VALID AND ENFORCEABLE[.]**

{¶44} Sister argues in her fifth assignment of error that the trial court erred in concluding that she was not entitled to payment of the $60,000 cognovit promissory note. We disagree as Sister did not plead a claim of breach of cognovit promissory note, seek judgment on the cognovit promissory note, or attach a copy of the cognovit promissory note to her complaint or amended complaint.

{¶45} An abuse of discretion standard of review also applies to Sister's fifth assignment of error. *Wilson*, 9th Dist. Summit No. 24245, 2008-Ohio-6431, at ¶ 12; *Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, at ¶ 5.

{¶46} Sister asserted claims for breach of contract, based on Brother's alleged breach of the Option Agreement (count one); fraud, based on Brother's alleged false representations and conduct pertaining to the Option Agreement (count two); negligent misrepresentation (count three), which Sister later withdrew and the court dismissed; and, constructive/resulting trust, contract reformation and specific performance of the Option Agreement (count four). Sister attached the Option Agreement as exhibit a to her complaint and amended complaint. Sister did not assert a claim to enforce the cognovit promissory note; she did not reference the cognovit

promissory note in her complaint or amended complaint; neither her complaint nor amended complaint requests judgment on the cognovit promissory note; and she did not attach a copy of the cognovit promissory note to her complaint or amended complaint.

{¶47} Civ.R. 10(D)(1) states that "[w]hen any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading." Sister did not attach the cognovit promissory note to her complaint or amended complaint nor did she assert a claim for enforcement of the note. Sister cannot now claim that the trial court erred in failing to grant something that she did not request. *State v. Slider*, 184 Ohio App.3d 68, 2009-Ohio-4179, ¶ 18 (4th Dist.) (appellant "cannot now claim that trial court erred in failing to grant something that was not requested by him"); *Eichenberger v. Eichenberger*, 10th Dist. Franklin No. 00AP-948, 2001 WL 410276, *4 (Apr. 24, 2001) ("plaintiff cannot properly assert the trial court abused its discretion in failing to grant the unrequested relief.").

{¶48} We accordingly conclude that the trial court did not err in failing to award Sister $60,000 pursuant to the cognovit promissory note. Sister's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. VI

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON [SISTER'S] FRAUD CLAIM WITHOUT EVEN ACKNOWLEDGING THE DISPUTED FACTS SUBMITTED IN OPPOSITION[.]**

{¶49} Sister alleges in her sixth assignment of error that the trial court failed to acknowledge disputed facts and erred in granting Brother's supplemental motion for summary judgment on her fraud claim. We disagree.

{¶50} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the

evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–359 (1992).

**{¶51}** Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *See Id.*; *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 114 (1998). Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996); *Mitseff* at 115 ("Requiring that the moving party provide specific reasons and evidence gives rise to a reciprocal burden of specificity for the non-moving party."). If the nonmoving party fails to respond with a supporting "affidavit or as otherwise provided in [Civ.R. 56]," then "summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E); *Dresher* at 293; *Mitseff* at 115.

**{¶52}** Sister has alleged that Brother "made numerous false representations * * * including representations that he would perform future acts while never intending to do so * * *[.]" Sister argued Brother falsely represented that (1) he was protecting her interests in the Property; (2) he found the Option Agreement on the internet when it was actually prepared by an attorney;

(3) the Option Agreement protected Sister's interests in the Property; (4) he was required under the Option Agreement to split the Property; (5) he was taking steps to split the Property; and (6) legitimate reasons existed for the delay in splitting the Property.

{¶53} Brother denied Sister's fraud claim and argued in his supplemental motion for summary judgment that, as Sister's fraud claim is related to and factually intertwined with her breach of contract claim, it is precluded by the court's order granting judgment in his favor on the breach of contract claim. Sister argued that a genuine issue exists as to whether Brother made a promise that he had no intention of keeping.

{¶54} The trial court granted Brother's motion for summary judgment concluding that Sister does not allege any facts that, if proven, establish a duty separate from her breach of contract claim. In response to Sister's allegation that Brother "made a "promise[,]" the trial court noted that Sister does not argue or establish how an alleged promise creates a legal duty or, further, a duty separate from the breach of contract claim.

{¶55} Sister argues on appeal that the trial court ignored factual issues when it granted summary judgment on her fraud claim. Sister maintains that remaining factual issues include whether Brother intended to keep his promise to split the lot; whether Brother intentionally drafted the Option Agreement in a way that allowed him to escape his obligation to split the lot; and, whether Brother made false promises to split the lot. Sister acknowledges that her breach of contract and fraud claims are intertwined, stating that her "contention * * * that [Brother's] bad faith breached the contract and prevented her performance" is "intertwined with her claim of fraud * * *." Brother argues that the trial court did not err as Sister's breach of contract claim and fraud claim are intertwined and judgment was properly granted in his favor on the breach of contract claim.

{¶56} This Court has recognized that "[i]n Ohio, a breach of contract does not create a tort claim" and that, "[g]enerally, 'the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim.'" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (9th Dist.1996), quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir.1981). This Court further noted in *Textron* that

> [a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action *only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.*

(Emphasis added.) *Id.* at 151. *Accord Thornton v. Cangialosi*, S.D. Ohio No. 2:09-CV-585, 2010 WL 2162905, *2 (May 26, 2010). Notably, "[t]he motive of a breaching party is irrelevant to a contract action." *Textron* at 151, citing *Wolfe* at 710. This Court accordingly concluded in *Textron* that failing to obtain a lessor's consent for a computer upgrade, "as fraudulent conduct, cannot be separated from the conduct as breach of the master lease." *Id.*

{¶57} Other districts have similarly recognized:

> A breach of contract claim does not create a tort claim, and a tort claim based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed.

*Prater v. Three-C Body Shop, Inc.*, 10th Dist. Franklin No. 01AP-950, 2002-Ohio-1458, *4, citing *Textron* at 151; *Dayton Children's Hosp. v. Garrett Day, LLC*, 2d Dist. Montgomery No. 28047, 2019-Ohio-4875, ¶ 109 ("As in *Textron*, the fraud claim and alleged breach both relate to the contract * * * [and] that the claims were factually intertwined and could not be separated."); *Pierre Inv., Inc. v. CLS Capital Grp, Inc.*, 6th Dist. Lucas No. L-21-1229, 2022-Ohio-4311, ¶ 37 ("A claim for fraud that duplicates a contract claim is not viable."); *Strategy Group for Media, Inc. v. Lowden*, 5th Dist. Delaware No. 12CAE030016, 2013-Ohio-1330, ¶ 24 (court recognized that, in

Ohio, a breach of contract claim does not create a tort claim; court held summary judgment was properly granted where fraud and breach of contract claims intertwined and based on same actions).

{¶58} Brother's duty to split the lot was based on the Option Agreement and dependent upon Sister exercising the Vacant Lot Option. Brother did not owe Sister a duty to split the lot outside of the Option Agreement. Brother established that summary judgment was properly granted on Sister's fraud claim as a matter of law.

{¶59} As the claims are factually intertwined and cannot be separated, and the trial court did not err in granting judgment in favor of Brother on Sister's breach of contract claim, we conclude that summary judgment was properly granted on Brother's supplemental motion. Sister's sixth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. VII

**THE TRIAL COURT ERRED IN BIFURCATING THE TRIAL WHEN [SISTER'S] SPECIFIC PERFORMANCE CLAIMS REQUIRED ANALYSIS OF MOTIVES AND BAD FAITH CONDUCT AND WERE INTERTWINED WITH HER FRAUD CLAIM[.]**

{¶60} Sister alleges in her seventh assignment of error that the trial court erred when it bifurcated her breach of contract claim from her fraud claim. We disagree.

{¶61} The trial court bifurcated Sister's breach of contract and fraud claims pursuant to Civ.R. 42(B). Civ.R. 42(B) states:

> For convenience, to avoid prejudice, or to expedite or economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court shall preserve any right to a jury trial.

{¶62} "'The decision of whether or not to bifurcate the proceedings * * * is a matter within the sound discretion of the trial court.'" *Butler v. Rejon*, 9th Dist. Summit No. 19699, 2000 WL

141009, *2 (Feb. 2, 2000), quoting *Sheets v. Norfolk S. Corp.*, 109 Ohio App.3d 278, 288 (3d Dist.1996); *Herald v. Hood*, 9th Dist. Summit No. 15986, 1993 WL 277541, *2 (July 21, 1993). "Thus, this court will not interfere with a trial court's decision to bifurcate pursuant to Civ.R. 42(B), unless the trial court abused its discretion." *Butler* at *2.

{¶63} Sister maintains that the trial court ordered bifurcation over her objections. Brother asserts that Sister never objected to bifurcation.

{¶64} There is nothing in the record that suggests Sister objected to bifurcation. Pursuant to the record, Brother filed a motion to bifurcate on July 22, 2022. Sister did not file a response to this motion. The trial court's August 15, 2022 order notes that a final pretrial was held on August 4, 2022, and that, at the final pretrial, "[t]he parties disagree[d] as to whether the breach of contract claim should be tried to a jury." The trial court's order makes no mention of any objections to bifurcation. There is no transcript of the August 4, 2022 final pretrial. Further, Sister did not raise any objections to bifurcation at the bench trial.

{¶65} There is nothing in the record that suggests Sister objected to a bifurcation of her breach of contract and fraud claims. Instead, the court's order only notes a disagreement as to whether a jury should decide the breach of contract claim. Accordingly, we cannot say that Sister preserved this issue for review. "It is well settled that the failure to timely object to a possible error results in a forfeiture of the issue for purposes of appeal." *Marsico v. Skrzypek*, 9th Dist. Lorain No. 13CA010410, 2014-Ohio-5185, ¶ 6. While Sister could still argue plain error on appeal, she had not done so, and we decline to construct an argument on her behalf. *See State v. Anderson*, 9th Dist. Wayne No. 14AP0054, 2016-Ohio-7814, ¶ 12. Sister's seventh assignment of error is, accordingly, overruled.

III.

{¶66} For the reasons set forth above, Sister's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, J.
CONCURRING.

**{¶67}** I concur with the lead opinion but write separately to clarify my position with respect to Sister's seventh assignment of error. Sister has argued that bifurcating her claims had the effect of denying her the right to a jury trial under Civil Rule 42(B). If an objection to bifurcation was raised during the August 4, 2022, pretrial, it was Sister's obligation to ensure that the record included a transcript. *Hester v. Coppinger*, 9th Dist. Medina No. 18CA0047-M, 2019-Ohio-3825, ¶ 6. In addition, Sister does not mention Civil Rule 39(A) in her appellate brief, and this Court should not construct an argument on her behalf. *See State v. Altomare*, 9th Dist. Lorain No. 21CA011827, 2024-Ohio-1721, ¶ 11.

FLAGG LANZINGER, J.
DISSENTING.

**{¶68}** I respectfully dissent from the majority opinion because I would sustain Sister's seventh assignment of error. As the majority notes, Sister asserted claims for breach of contract, negligent misrepresentation, fraud, and constructive/resulting trust, contract reformation and specific performance. Sister's amended complaint contained a jury demand, and requested actual damages, exemplary damages, attorney's fees, specific performance, and declaratory judgment. To the extent Sister sought money damages in her amended complaint, she was entitled to a jury trial. R.C. 2311.04 ("Issues of fact arising in actions for the recovery of money only * * * shall be tried by a jury * * *."). Civ.R. 39(A) provides, in part, that once a party has demanded a jury trial, the matter shall be tried to a jury unless the parties consent to a bench trial "by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record * * *." "[A] silent record means that the previously demanded right to a jury trial is still in effect, not having been waived." *Bishop v. Hybud Equip. Corp.*, 42 Ohio App.3d 55, 57 (9th Dist.1988),

quoting *Carl Sectional Home, Inc. v. Key Corp.*, 1 Ohio App.3d 101, 104 (10th Dist.1981). While a trial court may order separate trials in certain circumstances, it "shall preserve any right to a jury trial." Civ.R. 42(B).

{¶69} Here, the record does not reflect that Sister consented to a bench trial either by written or oral stipulation as required under Civ.R. 39. Instead, as the majority notes, the record reflects that the parties disagreed as to whether Sister's breach of contract claim should be tried to a jury. The trial court concluded that it should not because Sister was solely seeking equitable relief (i.e., specific performance) on that claim.

{¶70} In her seventh assignment of error, Sister argues that the trial court deprived her of her right to a jury trial when it bifurcated her claims for fraud and breach of contract. Specifically, she argues that her "primary contention was that [Brother]'s bad faith breached the contract and prevented her performance. These factual issues were intertwined with her claim of fraud—a claim for which she had the right to a jury trial." Sister also argues that "[b]y bifurcating the matter and allowing the Magistrate to *first* determine the factual bad faith arguments, [she] was deprived of her right to have a jury determine her fraud claim." (Emphasis sic.) Sister concludes that, "[u]nder the particular facts here, where [her] claims required intense factual scrutiny of motives coupled with a bad faith analysis, bifurcation resulted in a denial of [her] right to a jury trial on her fraud claim."

{¶71} The record reflects that Sister demanded a jury trial, that she never consented to a bench trial, and that her claims for breach of contract and fraud were premised upon intertwined factual allegations against Brother. I would hold that Sister was entitled to a jury trial on those claims. Accordingly, I would sustain Sister's seventh assignment of error, which is dispositive of this appeal. I, therefore, respectfully dissent.

APPEARANCES:

PETER T. CAHOON and KRISTEN S. MOORE, Attorneys at Law, for Appellant.

OWEN J. RARRIC, TERRY J. EVANS, and ZACHARY M. SOEHNLEN, Attorneys at Law, for Appellee.